UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDGET MICHELLE REYNAUD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RIVERBED TECHNOLOGY, LLC,<br><br>　　　　　Defendant. | Case No. 24-cv-00700-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 11 |

Before the Court is the motion to compel arbitration filed by defendant Riverbed Technology, LLC ("Riverbed"). Dkt. No. 11 ("Mot."). On May 17, 2024, the Court held a hearing on the motion and ordered supplemental briefing, which the parties have since submitted. *See* Dkt. Nos. 23, 24.

For the reasons stated below, the Court DENIES defendant's motion to compel arbitration of the Title VII claims and GRANTS the motion to compel arbitration of the California state law claims.

**BACKGROUND**

Plaintiff Bridget Michelle Reynaud served as Riverbed's Vice President of Global Field Operations from November 30, 2020, until her termination on August 19, 2022. Dkt. No. 1 ("Compl.") ¶¶ 6, 31. When she was hired, Reynaud and Riverbed signed an offer letter containing the following language:

> In the event of any dispute or claim relating to or arising out of your employment or termination of employment with the Company, including all contract, tort, discrimination, common law or statutory disputes or claims between you and the Company and/or its agents ("Arbitrable Claims"), you and the Company agree that all such

> disputes shall be fully and finally resolved by final and binding arbitration. The sole exceptions are claims under applicable workers' compensation law, disputes solely before government agencies (including but not limited to the NLRB or EEOC), unemployment insurance claims, and other claims expressly prohibited by law from being subject to binding arbitration, for which either party may seek court intervention. For all other Arbitrable Claims, you and the Company agree that arbitration shall be exclusive, final and binding remedy. . . .
>
> This letter, except to the extent governed by the Federal Arbitration Act, will be governed under Texas law. . . .

Dkt. No. 11-2, Blackner Decl., Ex. A at 3-4.

The precise contours of Reynaud's termination are not at issue in the present motion. To summarize, Reynaud contends that she was one of the few women in Riverbed's leadership and that she was discriminated against because of her sex and retaliated against for opposing gender discrimination. Compl. ¶¶ 1, 21. Riverbed states that it terminated Reynaud "for violating Riverbed's policies and financial controls in her role as VP of Sales Operations" related to Reynaud's attempt to book a multi-million-dollar deal "without the required contractual commitment from a customer." Mot. at 3. Reynaud vigorously disputes Riverbed's version of events.

This is not the first legal action arising out of Reynaud's termination. Following the termination, in December 2022, Riverbed initiated arbitration proceedings against Reynaud to recover the retention bonus it paid her less than a year before her termination. Reynaud filed a counterclaim in the arbitration proceedings, alleging gender discrimination in violation of Title VII of the federal Civil Rights Act. Reynaud ultimately withdrew her Title VII counterclaim, for reasons that will be discussed below. On September 28, 2023, the arbitrator issued a Final Award and denied Riverbed's claims regarding the retention bonus. Compl., Ex. 3.

On February 6, 2024, Reynaud filed the instant action in federal court. She brings two counts of sex discrimination and retaliation, in violation of Title VII, 42 U.S.C. § 2000e et seq.; three counts under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 et seq.; and one count of wrongful termination in violation of public policy.

Riverbed moves to compel arbitration of all claims and to dismiss the complaint in its entirety or, in the alternative, to stay proceedings or stay any non-arbitrable portions of this action

2

until the conclusion of arbitration.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. When a motion to compel arbitration is filed, a "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*.

## DISCUSSION

Here, neither party disputes that there is a valid arbitration agreement and that, generally speaking, the agreement covers claims of gender discrimination arising out of plaintiff's employment with Riverbed. Plaintiff argues, however, that her claims are not arbitrable because Riverbed has waived arbitration and/or that judicial estoppel bars Riverbed from asserting that the claims should now be arbitrated.

The Supreme Court's recent decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), "teaches that there is no 'strong federal policy favoring enforcement of arbitration agreements.' . . . The federal policy is to treat arbitration agreements like other contracts." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (citation omitted). As such, *Morgan* "has removed prejudice to the non-moving party as an element of waiver in the context of arbitration contracts." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). In the Ninth Circuit, therefore, "a party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Id.* For the second prong, courts "consider the totality of the parties' actions." *Id.* at 471 (citations omitted). "Although the party opposing arbitration still bears the burden of showing waiver, the burden is no longer 'heavy.' Instead, the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other

3

contractual context." *Armstrong*, 59 F.4th at 1014-15.

The parties agree that Riverbed had knowledge of its right to arbitrate Reynaud's sex discrimination claims. The question, therefore, is whether plaintiff has shown that Riverbed waived its right by acting inconsistently with the right to arbitrate.

### I. Title VII Claims

The Court finds Reynaud has met her burden and that Riverbed waived its right to arbitrate the Title VII claims. As noted above, in the prior arbitration proceeding Reynaud counterclaimed under Title VII. She alleged:

> 1. Ms. Reynaud was discriminated against by Riverbed Technology based on her gender, female, in violation of Title VII of the Civil Rights Act.
>
> 2. Ms. Reynaud, who was terminated for willful misconduct and/or gross negligence, was treated more harshly than Riverbed's male employees who were not disciplined or terminated for the same or similar conduct.
>
> 3. Ms. Reynaud seeks back pay, front pay, lost benefits, compensatory and punitive damages, and attorneys' fees.

Dkt. No. 12-4, Sloan Decl., Ex. 4.[1]

Following the filing of the counterclaim, Riverbed's attorney emailed the arbitrator, stating:

> Dear Mr. Rice:
>
> We have conferred with [Reynaud's counsel] Ms. Sloan and agreed to provide you with this update.
>
> If Ms. Reynaud intends to proceed with her employment discrimination claim, we do not waive the requirement that she first file with the EEOC. We do not agree that arbitration can go forward on this claim while the EEOC proceedings are pending.
>
> Additionally, Ms. Reynaud's attached employment agreement specifically carves out EEOC claims from claims to be decided in arbitration. If Ms. Reynaud gets a right to file from the EEOC and intends to pursue her claim, we do not waive our argument that the claim must be brought in a court of competent jurisdiction and not in arbitration.

---

[1] Neither party disputes the authenticity of the exhibits that the opposing party has submitted with their briefs.

4

Dkt. No. 12-5, Sloan Decl., Ex. 5 at 1.

The following day, on April 14, 2023, Riverbed filed its response to the counterclaim. The response stated, in part:

> 2. Respondent lacks standing to bring her gender discrimination claim because she has not obtained a right to sue letter from the EEOC. If Ms. Reynaud intends to proceed with her employment discrimination claim, Claimant does not waive the requirement that she first file with the EEOC.
>
> 3. Likewise, Respondent's claim is not ripe. Claimant does not agree that arbitration can go forward on a discrimination claim while the EEOC proceedings are pending.
>
> 4. Furthermore, Respondent's employment agreement carves out EEOC claims from claims that must be decided in arbitration. If Respondent gets a right to sue letter from the EEOC and intends to pursue her claim, Claimant does not waive its ability to seek direct court intervention as provided in the employment agreement.

Dkt. No. 12-6, Sloan Decl., Ex. 6.

On April 19, 2023, the arbitrator conducted a case management conference to address the counterclaim and issued an order later that day, making the following findings:

> 1. Ms. Reynaud has filed a counterclaim asserting Title VII based gender discrimination.
>
> 2. Riverbed asserts that Ms. Reynaud's gender discrimination claims are not subject to arbitration under the parties' agreement, that such claims must be litigated only in the courts, and only after appropriate administrative charge proceedings before the EEOC.
>
> 3. Riverbed agreed that it is waiving any arguments that Ms. Reynaud's Title VII claims are subject to the mandatory arbitration under the parties' agreement.
>
> 4. I find that Riverbed has expressly waived arbitration with respect to Ms. Reynaud's Title VII claims.
>
> 5. In light of Riverbed's agreement that Ms. Reynaud's discrimination claims are to be litigated in the courts and are not subject to arbitration, Ms. Reynaud has agreed to voluntarily dismiss her Title VII counterclaim in this proceeding.

Dkt. No. 12-7, Sloan Decl., Ex. 7 at 1.

On September 28, 2023, the arbitrator issued the Final Award, ruling against Riverbed on the retention bonus issue. In the order, the arbitrator again reiterated that Reynaud had voluntarily dismissed her Title VII counterclaim based on Riverbed's position that those claims were not

5

arbitrable and must be litigated in court:

> The parties previously agreed that certain discrimination claims asserted by Ms. Reynaud under Title VII of the Civil Rights Act of 1964 would be excluded from this arbitration, submitted to the EEOC and thereafter to the courts for determination. Pursuant to an order dated April 19, 2023, these discrimination claims are not before me, and are wholly outside the scope of this arbitration. I express no view on such claims.

Compl., Ex. 3 at 1-2.

Riverbed mentions none of this in its moving papers. Riverbed states: "Following [Reynaud's] termination, rather than submitting these disputes with Riverbed to the appropriate and agreed-upon forum, Plaintiff filed the instant action. Her counsel, despite being provided with information necessary to properly venue the matter, and despite meet-and-confer efforts, refused to stipulate to arbitration, forcing Riverbed to file this motion." Mot. at 4. Although Riverbed has changed counsel since the arbitration, it does not appear this lack of candor can be chalked up to ignorance or mistake. Plaintiff's counsel declares that she discussed the arbitration issue with opposing counsel—both former and present counsel—prior to Riverbed filing its motion to compel arbitration. Dkt. No. 12-9, Martinez Decl. ¶¶ 3-4. Moreover, the complaint itself described the prior arbitration, and the arbitrator's September 2023 Final Award is attached to the complaint. *See* Compl. ¶¶ 33-35 & Ex. 3.

In reply, Riverbed states that has always taken the position that plaintiff's gender discrimination claims were not ripe because she had not yet filed before the EEOC and that "Plaintiff could pursue her claims ***solely before the EEOC*** without arbitration but would be subject to arbitration if she filed a court action." Reply at 3. Even if this is what a logical reading of the arbitration agreement might have been, this does not appear to have been the position Riverbed took in the prior arbitration and which led plaintiff to voluntarily dismiss her counterclaim. Significantly, Riverbed does not address the arbitrator's April 2023 and September 2023 orders. Even if Riverbed is correct that the arbitrator and plaintiff each misunderstood Riverbed's position, the fact that the arbitrator *twice* memorialized the agreement that the Title VII claims must be submitted to the EEOC and then to the courts, and Riverbed took no action to correct this misunderstanding, is inconsistent with Riverbed invoking its right to arbitrate. *See Hill*, 59 F.4th at 460.

The Court finds that Riverbed waived its right to arbitrate Reynaud's Title VII claims through the actions it took in the prior arbitration. Accordingly, the Court DENIES the motion to compel arbitration of the Title VII claims.

## II. State Law Claims

As for plaintiff's state law claims, brought under the California FEHA and for wrongful termination in violation of public policy, the Court finds Riverbed did not waive arbitration. Such claims are within the scope of the parties' arbitration agreement, which covers "any dispute or claim relating to or arising out of your employment or termination of employment with the Company, including all . . . discrimination . . . disputes or claims between you and the Company[.]" Blackner Decl., Ex. A at 3. Plaintiff did not bring California state law claims in the prior arbitration proceeding. *See* Sloan Decl., Ex. 4. The complaint here is broader than the arbitration counterclaim, both in terms of factual allegations[2] and in terms of the legal claims. In other words, Riverbed's waiver applied only to the Title VII claims that plaintiff brought in her counterclaim. There was no waiver of California state law claims, as those claims did not exist in the arbitration.

Plaintiff's arbitration counsel has filed a declaration stating, "Although I filed a counterclaim for gender discrimination under Title VII in the arbitration, I did not intend to foreclose bringing a state law claim or other federal claim. . . . [Riverbed's counsel] clearly said that all 'EEOC claims' were subject to [sic] arbitration, which I interpreted under the arbitration agreement's language and Riverbed's counsel's argument to include either state or federal claims. I believed the position they took applied to both state and federal antidiscrimination claims, and based on this, I agreed to dismiss Reynaud's counterclaim." Sloan Decl. ¶ 12.[3] It appears that plaintiff assumed Riverbed was waiving arbitration of <u>all</u> claims arising out of gender discrimination. Because this was based

---

[2] The complaint includes allegations that plaintiff raised concerns about gender discrimination in the company's hiring and promotion practices. These allegations are absent from the arbitration counterclaim.

[3] Plaintiff's present counsel began working on the case partway through the arbitration. *See* Martinez Decl. ¶ 2 (declaring that she began consulting on the arbitration case in April 2023 and began representing Reynaud in early May 2023).

7

1   on an assumption on plaintiff's part and was never memorialized in the arbitrator's orders or
2   elsewhere, the Court declines to find waiver as to the California state law claims. Those claims are
3   within the scope of the arbitration agreement and are subject to arbitration.

4         Alternatively, plaintiff argues that her FEHA claims may be brought pursuant to judicial
5   estoppel. Opp'n at 9-10. As plaintiff acknowledges, under both California and federal law, judicial
6   estoppel requires a finding that a party has taken a position that is "totally" or "clearly" inconsistent
7   with its earlier position. *See id.* (citing *United Steelworkers of Am. v. Ret. Income Plan for Hourly-*
8   *Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 563 (9th Cir. 2008); *DotConnectAfrica Tr. v. Internet*
9   *Corp. for Assigned Names & Numbers*, 68 Cal. App. 5th 1141, 1158 (2021)). The Court cannot find
10  that Riverbed's current position that the California state law claims must be arbitrated is "totally"
11  or "clearly" inconsistent with its earlier position, where the earlier position applied only to the Title
12  VII claims that were brought in arbitration. As explained above, plaintiff assumed that Riverbed's
13  position applied to any claim—federal or state—that needed to be perfected before the EEOC, but
14  that assumption was not memorialized in the parties' communications or in the arbitration orders.
15  The Court finds Riverbed is not estopped from now arguing that the California state law claims must
16  be arbitrated.

17        Pursuant to the FAA, 9 U.S.C. § 4, the Court GRANTS Riverbed's motion to compel
18  arbitration of the California state law claims.

19

20  **III. Stay**

21        Following the hearing, the Court ordered that the parties submit supplemental briefing on
22  the question of whether to stay proceedings on the Title VII claims while the state law claims go to
23  arbitration. Dkt. No. 21. The parties have since submitted their briefs. Dkt. Nos. 23, 24. The
24  parties agree that it lies within the district court's discretion whether to stay the non-arbitrable claims
25  pending arbitration on the arbitrable claims. *See* Dkt. No. 23 at 1 (citing *Congdon v. Uber Techs.,*
26  *Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016)); Dkt. No. 24 at 2 (citing same); *see also United*
27  *Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) ("The decision
28  whether to stay the non-arbitrable issues . . . pending arbitration rests with the sound discretion of

8

the district court."). Plaintiff argues against a stay of the Title VII claims while defendant argues for a stay.

In deciding whether to stay the non-arbitrable claims, courts weigh various factors, including: "the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Congdon*, 226 F. Supp. 3d at 990 (quoting *Roderick v. Mazzetti & Assocs., Inc.*, No. C 04-2436 MHP, 2004 WL 2554453, at *2 (N.D. Cal. Nov. 9, 2004)). Other courts have looked to such factors as: "(i) the predominance of the arbitrable claims, (ii) the merit of the non-arbitrable claims, (iii) the Court's concern with controlling its own docket, and (iv) overall judicial economy." *Gray v. SEIU, United Serv. Workers West,* No. 20-CV-01980-JSW, 2020 WL 12228937, at *5 (N.D. Cal. Aug. 5, 2020). The Ninth Circuit has noted "a preference for proceeding with the non-arbitrable claims when feasible[.]" *United Commc'ns Hub,* 46 F. App'x at 415 (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 225 (1985) (J. White, concurring) ("the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course")).

Here, the Court will decline to stay the Title VII claims pending arbitration. The Court tends to agree with plaintiff that the current situation is one of Riverbed's own making. *See* Dkt. No. 23 at 5. Plaintiff brought her Title VII claims in arbitration over a year ago, and the parties could have obtained a resolution in that forum had it not been for Riverbed's stance regarding the non-arbitrability of those claims. Plaintiff argues, and the Court agrees, that a stay would only introduce further delay in adjudicating her civil rights claim. Under the circumstances presented here, the Court finds that the balance of the interests militates against a stay of the non-arbitrable claims.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES the motion to compel arbitration of plaintiff's Title VII claims. The Court GRANTS the motion to compel arbitration of plaintiff's California state law claims.

The Court declines to stay litigation on the Title VII claims pending arbitration on the California state law claims. The parties shall be prepared to address the schedule for the Title VII claims at the initial case management conference on July 12, 2024, and in their joint case management statement (due one week prior).

**IT IS SO ORDERED**.

Dated: July 2, 2024

SUSAN ILLSTON
United States District Judge